# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

ANITA GIBBS; LAUREN RHOADES;
LAQUENZA MORGAN; ARCHIE SKIFFER,
JR.; TIMOTHY HALCOMB, individually and on
behalf of a class of all others similarly situated,

    Plaintiff,

       v.

CITY OF JACKSON, MISSISSIPPI; CHIEF
JAMES E. DAVIS, in his official capacity,

    Defendants.

Civil Action No.   3:22-cv-99-KHJ-MTP

# CLASS ACTION COMPLAINT

Paloma Wu
Robert B. McDuff
MISSISSIPPI CENTER FOR JUSTICE
5 Old River Pl., Ste 203
Jackson, MS 39202
(601) 709-0857

*Counsel for Plaintiffs*

i

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

JURISDICTION & VENUE ........................................................................................................2

PARTIES .......................................................................................................................................3

GENERAL ALLEGATIONS........................................................................................................6

CLASS ACTION ALLEGATIONS .............................................................................................7

CAUSE OF ACTION.................................................................................................................10

PRAYER FOR RELIEF .............................................................................................................11

## PRELIMINARY STATEMENT

1.      The Jackson Police Department is enforcing a set of roadblock procedures dubbed "Ticket Arrest Tow" (TAT) that has led to the disproportionate placement of vehicular roadblocks, or checkpoints, in majority-Black and low-income neighborhoods.  Citizens in these areas who have done nothing wrong are routinely stopped and delayed as they go about their business because the City believes this is an effective method of crime control.  But it is not.   More importantly, these wholesale stops of citizens in the name of crime control, without any reason to believe they have committed crimes, is a violation of their rights under the Fourth Amendment to the United States Constitution to be free of unreasonable searches and seizures.  This class action is brought to vindicate their rights and to seek a court order prohibiting the City from implementing a scheme of unconstitutional roadblocks.

2.      The City has repeatedly confirmed the unconstitutional purpose of this policy, practice, and custom of using checkpoints to flush out men and women they want to apprehend for outstanding warrants, illegal gun possession, or other criminal offenses.  For example, on February 18, 2022, Chief James E. Davis responded publicly to allegations that JPD was targeting Jackson's low-income neighborhoods with checkpoints by stating the following:

> People think that it's roadblocks, that's the public concept, and they took it wrong, like there's something that we're targeting—a certain group of people. Our intent is to get wanted individuals off the streets.

3.      By routinely stopping people in certain neighborhoods for crime control purposes without any reason to believe they have committed crimes, TAT treats them like wanted suspects as they drive to and from school or work or for other legitimate reasons. Some residents drive out of their way to circumvent roadblocked streets to avoid the delay as they go about their business.

4.      Just as the police cannot walk in every home to search for evidence of a crime or stop and delay every citizen walking down the street to pat them down for drugs or illegal weapons or check their drivers licenses to see if they are wanted for a crime, they cannot do the same with every motorist on the public roads.  If they could, they might make more arrests for criminal activity, but our security in our homes and our freedom to go about our business in public would be very restricted.  The Fourth Amendment prohibits unreasonable searches and seizures and the Supreme Court has made it clear that wholesale stops of the kind being employed in Jackson are unreasonable.  Otherwise, said the Court, "such intrusions [would] becom[e] a routine part of American life." *City of Indianapolis v. Edmond,* 531 U.S. 32, 42 (2000).  Thus, the Court has said: "We cannot sanction stops justified only by the generalized and ever-present possibility that interrogation and inspection may reveal that any given motorist has committed some crime." *Id.* at 44.  Most of us are not wanted for the commission of crimes and the Constitution does not allow the police to intrude our lives as if we were.

## JURISDICTION & VENUE

5.      This action is brought pursuant to 42 U.S.C. § 1983.

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).

7.      The Defendants are located in Hinds County, Mississippi and in the Southern District of Mississippi and the events giving rise to this complaint occurred there.

8.      This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

9.      Venue is properly set within the United States District Court for the Southern District of Mississippi pursuant to 28 U.S.C. § 1391.

2

**PARTIES**

*Plaintiffs*

10.     Plaintiff Anita Gibbs is a 58-year-old Black American who has lived in West Jackson for over 20 years. She has gone through numerous JPD checkpoints in recent years, all in majority-Black and low-income areas of Jackson. For years, Ms. Gibbs worked in a majority-white area of Jackson. She drove to work from her home in West Jackson through majority-white area of Jackson to get to work. She sometimes made the drive twice a day so she could eat lunch at home. Ms. Gibbs has never encountered or observed a JPD roadblock in majority-white areas of Jackson. In West Jackson in recent years, she has encountered them regularly. Most recently, last week, in the middle of a weekday, she went through one JPD roadblock on Ellis Avenue on her way to pick up her daughter, showing her valid license and current insurance card. On her way home with her daughter, a different JPD roadblock blocking the other lane of Ellis Avenue was set up between her and her home. She had her current license and insurance card—she had just shown it to JPD—but the thought of being delayed and disrespected by having go through a second JPD roadblock that day, with her daughter, was too much. She took a longer way home. Being disproportionately subjected to JPD roadblocks reminds Ms. Gibbs of how it felt to be a girl walking in downtown Jackson when she was not allowed to go into certain stores or was treated differently when she did.

11.     Plaintiff Lauren Rhoades is a 32-year-old white woman who is married to Plaintiff LaQuenza Morgan. Ms. Rhoades and Mr. Morgan live in a majority African American neighborhood of Jackson and has been through numerous JPD roadblocks in the past three years. On a regular basis, JPD installs checkpoints at the entrance to her neighborhood, near an apartment complex where Jackson Public School children meet to catch the bus.  Ms. Rhoades estimates that

3

this location is nearly all African American and low-income. In going through JPD checkpoints at this location, Ms. Rhoades is often waved through the checkpoint without having to stop or speak to the officer or provide any documentation. In instances when she has been waved through, she has observed other cars at the same checkpoint be stopped. Of the times she has been asked to show her ID, she usually holds it up and the officer looks at it without taking it in hand, and then the officer waves her through without requesting she show proof of insurance.

12.     Plaintiff LaQuenza Morgan is a 33-year-old mixed-race African American man who is married to Plaintiff Lauren Rhoades. Mr. Morgan has been through multiple JPD roadblocks in the past three years. These roadblocks have been located in a majority-African American and low-income neighborhood.

13.     Plaintiff Archie Skiffer, Jr. is a 43-year-old Black man who works in Jackson, Mississippi, and lives in Mendenhall, Mississippi. Mr. Skiffer previously lived in Jackson, Mississippi, while attending Jackson State University. He works at the Mississippi Department of Archives and History during the day, five days a week. On those days, he also works for Door Dash delivering food to Jackson residents from approximately 5:30 p.m. to 10:30 p.m. In his capacity as a food delivery driver, Mr. Skiffer does not feel he can afford to regularly encounter JPD's TAT roadblocks. When he learned of the practice through the press, he prepared to drive alternate routes or out of his way to avoid them. He has been using an app to monitor roadblock placement since TAT launched, and while driving in majority-Black and low income neighborhoods in Jackson, he has intentionally altered his route to avoid encountering multiple reported JPD checkpoints. He has seen the checkpoints as they were being set up. He has made food deliveries to people in these neighborhoods who have told him they would be driving themselves to get food for their families, but they do not want to sit at roadblocks.

14.     Plaintiff Timothy Halcomb is a 41-year-old white man who lives in South Jackson, which is one of the majority-Black and lower income areas targeted by JPD for checkpoints. Mr. Halcomb works in the restaurant industry. As a part of his job, Mr. Halcomb drives up to a few hundred miles per week. He regularly drives in his own majority-Black neighborhood and in the majority-white neighborhoods in Jackson.  Mr. Halcomb has repeatedly been subjected to JPD roadblocks in majority-Black neighborhoods in Jackson, but he has never seen a JPD roadblock in majority-white neighborhoods in Jackson, through which he frequently drives for work. Mr. Halcomb was most recently subjected to a JPD roadblock on February 11, 2022, in the early afternoon, while driving on Raymond Road before McDowell Road. Mr. Halcomb was forced to wait in his car in the roadblock line, which stretched for many blocks, for approximately 20 to 30 minutes until he arrived at the front of the checkpoint, where a JPD officer asked him for his license and insurance. After Mr. Halcomb refused, he was waived through.

15.     Plaintiffs Archie C. Skiffer, Jr. and Timothy Halcomb are both members of Mississippi Alliance for Public Safety (MAPS).  The MAPS membership includes individual Mississippi residents and over a half-dozen locally run Mississippi community-based organizations.[1]

### *Defendants*

16.     Defendant CITY OF JACKSON ("Jackson" or "the City") is a political subdivision of the State of Mississippi that can sue and be sued in its own name.

---

[1] These include Mississippi Rising Coalition; Mississippi chapter of the American Descendants of Slavery Advocacy Foundation; Black Lives Matter Mississippi; Mississippi chapter of the Party for Socialism and Liberation; Mississippi Freedom Democratic Party; and South Mississippi Showing Up for Racial Justice.

17.     Defendant JAMES E. DAVIS (Chief Davis) is the Chief of Police of JPD and is the final policymaker for the City with respect to all law enforcement and crime control decisions. Chief Davis is and was responsible for JPD's roadblock policy, practices, and customs. He has implemented the illegal policing tactics described in this Complaint. Chief Davis is responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the JPD's  officeea and other personnel. He is sued in his official capacity.

## GENERAL ALLEGATIONS

18.     "Ticket Arrest Tow" (TAT) is the most recent incarnation of an unconstitutional JPD policy, custom, and practice that deploys checkpoints for purposes of general crime control and that disproportionately locates JPD roadblocks in majority-Black and low-income areas.

19.     Under the JPD's TAT program, officers are directed to give tickets to all drivers who do not have a license or current insurance and to order that their cars be towed.  In many instances, the motorists are also arrested and taken to police facilities where they are photographed and fingerprinted so their mugshots and fingerprints can be used in the search for people who commit crimes.

20.     The Mayor of Jackson confirmed the unconstitutional purpose of JPD's roadblocks at a press conference on February 14, 2022, where he described JPD roadblocks as crime-control "tools":

> [P]eople who don't have the proper documentation can receive citations for not having that documentation. I do want to express to the community the importance of these roadblocks. These roadblocks are important when we've had communities that have been plagued by car jackings, plagued by various forms of violence. These are useful tools to the police department to help mitigate some of those concerns.

21.     On February 16, 2022, a JPD spokesperson explained that: "due to the fact that we come across some of these violent criminals who are wanted . . . that is the purpose of us having

6

these checkpoints." He explained that TAT program is part of JPD's effort to "rid [the City of] this crime problem" and to "come across people that we're looking for," he hoped that the public will see that, through the checkpoints, JPD is doing everything it can to "rid [the City] of crime."

22.    JPD's roadblock practices have unconstitutionally interrupted and prevented the movement of thousands of people as they go about their lives, often for significant periods of time. On February 18, 2022, Chief Davis was asked about the JPD checkpoints by media. Chief Davis answered:

> We are doing everything we can to keep Jackson safe. We've got individuals with outstanding warrants that is wanted and we're looking to bring them to justice.

In a reversal of earlier statements and practices, Chief Davis then explained they are only taking people wanted on outstanding warrants to police facilities, not those who are driving without a license and insurance.

23.    On February 18, 2022, Chief Davis responded to allegations that JPD roadblocks were targeting poor people, and he clarified to media that the purpose of JPD TAT checkpoints were for general crime control:

> People think that it's roadblocks, that's the public concept, and they took it wrong, like there's something that we're targeting—a certain group of people. Our intent is to get wanted individuals off the streets.

## CLASS ACTION ALLEGATIONS

24.    The named Plaintiffs have suffered constitutional violations as a direct result of JPD's TAT checkpoint practices, which are pervasive, widespread, and have the force of law. Because each named Plaintiff lives, works, and/or regularly drives in the majority Black and low-income where JPD disproportionately locates roadblocks, there is an extremely high likelihood that they will be subject to unreasonable seizures at JPD's TAT checkpoints in the future.

25.     The named Plaintiffs seek to bring this action on their own behalf and on behalf of a class of similarly situated individuals pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

26.     All named Plaintiffs are Class Representative Plaintiffs, and they seek to represent the following Class in order to obtain declaratory and injunctive relief with respect to Defendants' policy or practice of deploying unconstitutional vehicular roadblock: Individuals who have encountered or likely will encounter roadblocks established by the JPD for purposes of general crime control.

27.     The Class meets all of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure.

28.     The Class is so numerous as to render joinder impracticable. Many thousands of individuals have encountered JPD's roadblocks and thousands more will absent injunctive relief.

29.     The unlawful law enforcement activities described herein, and the resulting violations of individuals' constitutional rights, have occurred, and will continue to occur, on a routine basis and for the foreseeable future absent injunctive relief.

30.     Joinder is impracticable because of the large number of people in the class.  Also, many members of the Class are not aware that the roadblocks violate their constitutional rights that they have the right to seek redress in court to prevent it from happening again. Many members of the Class are without the means to retain an attorney to represent them in a civil rights lawsuit. There is no appropriate avenue for protection of the Class members' constitutional rights other than a class action.

31.     The following common question of law or fact is central to the claims of the Class: Whether the JPD's policy, custom, and practice of establishing roadblocks for the purpose of crime control contravenes the Fourth Amendment to the United States Constitution.

32.     The legal theories under which the Class Representative Plaintiffs seek declaratory and injunctive relief are the same or similar to those on which all members of the Class will rely, and the harms suffered by the Class Representative Plaintiffs are typical of the harms suffered by members of the Class.

33.     The Class Representative Plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interest with members of the Plaintiff Class, and will fairly and adequately protect the interests of the Class.

34.     The Class Representative Plaintiffs continue to reside and/or work in and around Jackson, including the neighborhoods in which roadblocks are disproportionately located, and both intend to continue to do so. As long as JPD continues to implement the policies, practices, and customs described herein, the Class Representative Plaintiffs will remain at substantial risk of suffering constitutional violations as a result.

35.     The Class Representative Plaintiffs are represented by the Mississippi Center for Justice. Counsel for the Plaintiffs have the resources, expertise, and experience to prosecute this action. Counsel for the Plaintiffs know of no conflicts among members of the Class or between the attorneys and members of the Class.

36.     The Class should be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the class, thereby making class-wide declaratory and injunctive relief appropriate.

9

**CAUSE OF ACTION**

**(Claims of Class Representative Plaintiffs and Class Members Pursuant to 42 U.S.C. § 1983 Against Defendants for Violations of the Fourth Amendment)**

37.     Plaintiffs repeat and re-allege all paragraphs above as if fully set forth herein.

38.     As set forth in this Complaint, Defendants Chief Davis and the City of Jackson have implemented, enforced, and sanctioned a policy, practice, and custom, labeled dubbed TAT, of conducting unreasonable seizures of members of the class in the absence of reasonable suspicion and probable cause.  This has been done through roadblocks and checkpoints conducted in the name of crime control.  The TAT program violates the Fourth Amendment to the United States Constitution and is the most recent manifestation of a pre-existing JPD policy, practice, and custom of conducting roadblocks and checkpoints for purposes of crime control that also violates the Fourth Amendment.  The Fourth Amendments applies to states and local governments through the Fourteenth Amendment.

39.     There is no valid constitutional basis that justifies the disproportionate location of roadblocks in majority Black and low-income neighborhoods.  This disproportionate pattern in the City of Jackson is unreasonable and contributes to the constitutional infirmity of the JPD roadblock policy, custom and practice.

40.     Each of the Defendants has acted under color of law and in violation of, and with deliberate indifference to, the Fourth Amendment rights of the Class Representative Plaintiffs and other members of the Class.

41.     These constitutional violations are ongoing and, absent injunctive relief, will continue to be inflicted upon the Class Representative Plaintiffs and other members of the Class will be violated by JPD personnel in the immediate future.

10

42.     The Class Representative Plaintiffs and other members of the Class have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from continuing to implement their unconstitutional roadblock policies, customs, and practices.

## PRAYER FOR RELIEF

**WHEREFORE,** the Class Representative Plaintiff and other members of the class they seek to represent pray that the Court will:

A.     Issue an order certifying as a class pursuant to Rule 23 (b)(2) of the Federal Rules of Civil Procedure the Class, with the Class Representative Plaintiffs as representatives.

B.     Issue individual class-wide judgments declaring that:

> Defendants' policy, custom, and/or practice regarding vehicular roadblocks violates the Fourth Amendment to the United States Constitution.

C.     Issue an order:

   i.     Enjoining Defendants from continuing their unconstitutional policy, custom, and practice regarding vehicular roadblocks;

   ii.     Enjoining Defendants from continuing their practice of disproportionately locating vehicular roadblocks in majority-Black and low-income neighborhoods.

   iii.     Requiring Defendants to establish a system of adequate reporting, monitoring, and training to ensure that no further unconstitutional roadblocks are established and that all orders from this Court are followed.

D.     Award all Plaintiffs, including the members of the Class, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

E.     Award all Plaintiffs, including the members of the Class, costs of suit pursuant to 42 U.S.C. §§ 1920 and 1988; and

11

F.      Award such other and further relief as this Court may deem appropriate
        and equitable.


Dated: February 23, 2022                    Respectfully Submitted,

                                            /s/Paloma Wu
                                            Paloma Wu (Miss. Bar No. 105464)
                                            Robert B. McDuff (Miss. Bar No. 2532)
                                            MISSISSIPPI CENTER FOR JUSTICE
                                            5 Old River Pl., Ste 203
                                            Jackson, MS 39202
                                            (601) 709-0857
                                            pwu@mscenterforjustice.org
                                            rmcduff@mscenterforjustice.org

                                            *Attorneys for Plaintiffs*

12