**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVSION**

| | |
|---|---|
| LAQUENZA MORGAN; LAUREN RHOADES; ARCHIE SKIFFER, JR.; TIMOTHY HALCOMB, individually and on behalf of a class of all others similarly situated,<br><br>    Plaintiffs,<br><br>       v.<br><br>CITY OF JACKSON, MISSISSIPPI; CHIEF JAMES E. DAVIS, in his official capacity,<br><br>    Defendants. | Civil Action No. 3:22-cv-99-KHJ-MTP |

**ORDER AND CONSENT DECREE**

Having reached a mutually agreeable resolution of this matter, the parties ask the Court to enter an Order memorializing their agreement and setting forth the Court's authority to enforce compliance therewith.  In accordance with that request, the Court finds and orders as follows:

## I.      INTRODUCTION

### A.      <u>The Action</u>

1.      This class action lawsuit for declaratory and injunctive relief (the "Action") was filed on February 23, 2022, against the City of Jackson, Mississippi ("City"), and chief James E. Davis ("Chief Davis"), in his official capacity (hereinafter referred to individually and collectively as "<u>Defendants</u>").  The individual plaintiffs are Lauren Rhodes, LaQuenza Morgan, Archie Skiffer, Jr., and Timothy Halcomb (hereinafter referred to individually and collectively as "<u>Plaintiffs</u>"). Plaintiffs and Defendants are from time to time referred to hereinafter individually as a "Party" and collectively as the "Parties."

2.      Plaintiffs allege that Defendants, through the Jackson Police Department ("JPD"), engage in policing policies, practices, and customs that violate the Fourth Amendment to the United States Constitution. Defendants deny Plaintiffs' allegations.

### B.      <u>Mutual Recognition of Principles</u>

1.      The Parties recognize the importance of the rights protected by the Fourth Amendment to the United States Constitution.  Accordingly, and in the interest of avoiding costly and protracted litigation, the Parties have reached a settlement of all the claims in the Action, which includes the imposition of this Order and Consent Decree (the "Consent Decree").

2

## II.   GENERAL PROVISIONS

1.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. Venue is proper in the Southern District of Mississippi pursuant to 28 U.S.C. § 1391.

2.      This Consent Decree shall become effective and binding upon the Parties immediately upon the Court's entry hereof (the "Effective Date").

3.      The Consent Decree shall be in effect for four (4) years unless extended by the Court upon a showing that Defendants have not substantially complied with the consent decree. Plaintiffs shall not move to formally enforce the consent decree without first notifying Defendants in writing of the alleged non-compliance and allowing them 30 days to cure.

4.      The Court shall retain jurisdiction to enforce the terms of the Consent Decree.

5.      Any action to enforce this Consent Decree shall only be brought in the United States District Court of the Southern District of Mississippi, Northern Division.

6.      The Consent Decree shall be enforceable by each of the named individual Plaintiffs.  No Defendant shall object to the standing of any then-existing named Plaintiff in any contempt proceeding to enforce any provision of this Consent Decree. Plaintiffs may substitute another adult who has been subject to a City of Jackson checkpoint since the Effective Date as a named Plaintiff in the place of any currently named Plaintiff, upon a showing that good cause (including but not limited to the factors expressly enumerated in Rule 25 of the Fed. R. Civ. P.) exists for withdrawal of the current Plaintiff as to which substitution is sought, subject to the approval of the Court.  In the event that, at some point in

the future, the Court must resolve the merits of the Complaint, Defendants may nevertheless contest whether any substituted Plaintiff has proven an injury which may be redressed under federal law.

III.     **POLICING POLICIES**

     **A.**     <u>**Checkpoint Policy**</u>

     1.     The MCSD will adopt the Checkpoint Policy attached hereto as Exhibit A.

     2.     Defendants shall implement and ensure compliance by JPD personnel with the Checkpoint Policy as described herein and as set forth in Exhibit A to this Consent Decree (the "<u>Agreed Policy</u>").  While this Consent Decree is in effect, Defendants shall not amend, revise, or otherwise modify the Agreed Policy unless such amendment, revision, or modification is expressly authorized by further order of the Court.

     3.     JPD shall (i) distribute to all JPD personnel copies of the Agreed Policy as soon as practicable following Court approval of the Consent Decree; (ii) conduct an in-person training concerning the Agreed Policy; (iii) ensure that all JPD personnel read and familiarize themselves with the Agreed Policy; and (iv) ensure that all newly hired JPD personnel are informed of the contents of this policy.

     4.     JPD will not request that any other law enforcement agency take any actions that would in any way serve to circumvent the Consent Decree and/or the Agreed Policy.

4

B.     **Data Provision**

1.       JPD will provide to Plaintiffs, on a quarterly basis, certain data and information regarding checkpoints as described below (the "Policing Data"). The Policing Data shall be provided within thirty (30) days of the end of any calendar quarter to Plaintiffs.

2.       The Policing Data will include (a) for each checkpoint, the Summary Report referenced in the Checkpoint Policy; and (b) a spreadsheet compiling selected information required in the summary report: date; location (streets, precinct, beat); supervisor; reason for checkpoint; number of citations/tickets; number of arrests; and number of searches.

IV.     **MUTUAL RELEASES**

1.       **By Plaintiffs**: Except for any claim or remedy arising from a breach of this Agreement, Plaintiffs, on their behalves and on behalf of their successors, heirs, and assigns, hereby release, remise, and forever discharge Defendants and their successors, heirs, and assigns, from all claims, suits, actions, charges, demands, judgments, costs and executions present and future, known or unknown, both legal and equitable in any manner arising out of the facts giving rise to the Action.

2.       **By Defendants**: Except for any claim or remedy arising from a breach of this Agreement, Defendants, on their behalf and on behalf of their successors, heirs, and assigns, release, remise, and forever discharge Plaintiffs and their successors, heirs, and assigns from all claims, suits, actions, charges, demands, judgments, costs and executions present and future, known or unknown, both legal and equitable in any manner arising out of the Action.

5

## V.      MISCELLANEOUS

1.      Defendants' consent to the imposition of this Consent Decree is not an admission by Defendants that any Defendant, JPD, or any deputy or employee of JPD has engaged in any unconstitutional, illegal, or otherwise improper conduct.

2.      Nothing in this Consent Decree is intended to limit the lawful authority of the City oversee the operations of JPD.

3.      If, after the Effective Date hereof, any provision of this Consent Decree is held to be illegal, invalid, or unenforceable, the remaining provisions shall continue in full force and effect.

4.      This Consent Decree shall be binding on the Parties and any successors thereto, including any person substituted as Plaintiff, and any Chief of JPD who may succeed Chief Davis while this Consent Decree remains in effect.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the parties to this Consent Decree shall comply with the terms set forth therein. Plaintiffs' claims are dismissed with prejudice, subject to the ongoing authority of this Court to enforce the Consent Decree.

## EXHIBIT A: CHECKPOINT POLICY

| *GENERAL ORDER* | ISSUE DATE:<br>October ___, 2022<br>REVISED DATE: | NO. 600-28 |
|---|---|---|
| **JACKSON POLICE DEPARTMENT** | REFERENCE:<br>This General Order supersedes all prior departmental directives on this subject. | |
| **SUBJECT: Safety Checkpoints** | | |

### I. PURPOSE

The purpose of this policy is to provide procedures for the physical construction and operation of all Jackson Police Department (JPD) safety checkpoints to maximize the deterrent effect and increase the perception of "risk of apprehension" of motorists who would operate a vehicle while impaired by alcohol or other drugs or who are in violation of other traffic safety laws in the State of Mississippi.  This policy governs all safety checkpoints constructed or operated by JPD personnel.

### II. POLICY

It shall be the policy of this department to implement a safety checkpoint program. This will be done as part of a comprehensive enforcement program. To ensure standardization of this program a clear and concise set of written guidelines has been developed governing procedure on how safety checkpoints will be operated within the Jackson Police Department.
To implement this policy this agency must:

1. Conduct safety checkpoints only for constitutionally acceptable purposes. Safety checkpoints shall not be conducted for purposes of general crime control or deterrence, narcotics interdiction or to check for outstanding warrants.

2. Satisfy federal, state, and local legal requirements.

3. Conduct safety checkpoints with a minimal amount of intrusion or motorist inconvenience.

4. Assure the safety of the public as well as law enforcement officers involved.

5. Provide for an objective site selection process based on relevant data.

6. Officer selection should be based on experience and training.

**7.** Operational procedures will be covered during a briefing period prior to each safety checkpoint.

## III. GENERAL

A. A method for selecting motorists to be stopped, e.g., every vehicle, every fifth vehicle, etc. should be decided prior to each safety checkpoint to ensure objectivity. Exceptions shall not be made to the method for selecting motorists to be stopped absent in specific unusual circumstances.  Any exceptions must be documented.

B. The role of each officer at each safety checkpoint should be determined.

C. A predetermined area should be identified for the removal of vehicles that require further investigation.

D. A record will be maintained containing the information set forth in Section VIII.

E. Safety checkpoints are to be set up only by the Patrol Services Bureau of the Department using at least one marked JPD vehicle, but any JPD officer may assist in the safety checkpoint while wearing official JPD identifying clothing.

F. All safety checkpoints must be: (a) approved by an individual who has command-level authority over all precincts such that checkpoints are centrally approved and centrally tracked; and (b) located pursuant to a process, subject to monitoring, that insures checkpoints are spread across all "beats" (precinct subdivisions) in the City of Jackson with equal frequency—safety checkpoints may be placed in any beat, but no beat may subject to a checkpoint twice before all beats have been once.

G. JPD personnel conducting a safety checkpoint shall not run or cause to be run, as part of the standard operation of a safety checkpoint, searches for outstanding warrants concerning drivers or their passengers.

H. Officers shall take into consideration the health, wellness, and safety of motorists and passengers, including age, disability, or illness, when deciding to make any arrest.

I. No arrests will be made, only a citation may be given, for having no insurance, lapsed insurance, expired insurance, or for driving with a suspended license if JPD can know at the checkpoint that the suspension is for any reason other than a

driving-related offense.  These offenses shall not be a basis for checking for outstanding warrants.

J.  Individuals who are arrested shall be allowed the opportunity to identify a person to take custody of their vehicle. In the event a car cannot be retrieved but can be legally parked, a driver facing arrest may leave his or her car legally parked in lieu of having it towed. JPD personnel shall only call a towing service as a last resort, including in preparation for closing the safety checkpoint.  If the city's towing contract allows a company to charge a driver a fee for waiting on site, then JPD shall not call a towing service before one is needed.

K.  The city shall ensure that towing companies shall make towed cars retrievable within 24 hours, including on weekends, and shall not charge any storage fee for cars retrieved within 24 hours. Towing and storage fees shall be capped for any towing company providing services at checkpoints for the City of Jackson.  These rate caps shall be added to this General Order by December 20, 2022, through the City of Jackson filing an attachment to the 2022 consent decree regarding safety checkpoints. The attachment shall list the capped fee schedule, which cannot exceed by more than 15% the rate caps in the city's most recently expired towing company contract, which for mid-weight cars was $75 per tow and $25 per day for storage over 24 hours.

L.  JPD personnel will provide all ticketed or arrested individuals with the following information via a handout sized for easy distribution:

    a.  For ticketed individuals, contact information for the clerk of the court regarding options that people with proof of a valid license and insurance may have to address certain infractions prior to their court date.

    b.  For individuals with a suspended license, information referring them to the Department of Public Safety (DPS) for license reinstatement.

    c.  For individuals facing having a car towed, information about their options:

        i.  Their option to call another driver; legally park their car; call a towing company of their choice; or call the city's towing contractor;

    ii. The city's towing contractor's rate cap; maximum total amount allowable charge; hours and contact information;

    iii. That they can retrieve their vehicles within 24 hours, including over the weekend;

    iv. How to pick up their car from impound, including fee schedule, hours and contact information.

M. All interactions with pedestrians at safety checkpoints shall be governed by any other applicable JPD policy.

N. The department must be able to objectively outline criteria utilized in the site selection process.

  1. Traffic experiences.

    a. Unusual incidence of alcohol/drug or other traffic-related motor vehicle collisions.

    b. Alcohol/drug-impaired driving violations.

    c. An unusual number of night-time, single-vehicle collisions.

    d. Any other documented alcohol/drug or other traffic-related vehicular incidents.

    e. The location of establishments that sell liquor by the drink.

    f. Special holidays or other occasions.

    g. Other objective criteria that may arise from time to time.

  2. Select locations and times that permit the safe traffic flow through the safety checkpoint.

    a. Consideration should be given to posted speed limits, traffic volume, visibility, and avoiding morning and evening rush hours.

    b. Ensure sufficient adjoining space is available to pull vehicles off the traveled portion of the roadway.

    c. Consider other conditions that may pose a hazard.

    d. The site should have sufficient visibility from each direction and sufficient illumination.

O.  The department shall conduct formal in-person trainings concerning this policy, ensure all JPD personnel read and familiarize themselves with it, and ensure that all newly hired JPD personnel are informed of the contents of this policy.  Only JPD personnel who have received formal in-person training on this policy may be involved in operating a safety checkpoint.

## IV. PERSONNEL

1.  A sworn, uniformed officer will be assigned to provide on-scene supervision of the safety checkpoint.

2.  The safety checkpoint will be staffed by enough uniformed personnel to assure a safe and. efficient operation. Any officers not in official uniform must be wearing clothing that clearly identifies the officer as a JPD officer.

## V. MOTORISTS WARNINGS/SAFETY METHODS

1.  Special care is required to warn the approaching motorist of the checkpoint.
2.  Basic equipment may include, but is not limited to:
    a.  Warning signs placed in advance of the safety checkpoint.

    b.  Flares, fugues, or similar devices.

    c.  Safety cones or similar devices.

    d.  Marked patrol vehicles. Absent exigent circumstances, at least one marked patrol car with blue lights on must be at each safety checkpoint.

3.  The use, placement, and types of traffic control devices must comply with federal, state, or local transportation codes.

## VI. CONTINGENCY PLANNING

Any deviation from these procedures must thoroughly be documented in the summary report in Part VIII of this policy, with the reason for the deviation (i.e., traffic backing up, intermittent inclement weather).

11

## VII. DATA COLLECTION AND EVALUATION

1. Time, date, and location of the safety checkpoint (including the cross streets that are in the closest proximity to the safety checkpoint's location)

2. Objective reasons for conducting the safety checkpoint, which may include the following:

    a. Unusual incidence of alcohol/drug or other traffic-related motor vehicle collisions.

    b. Alcohol/drug-impaired driving violations

    c. An unusual number of motor vehicle collisions.

    d. Any other documented alcohol/drug or other traffic-related vehicular incidents.

    e. The location of establishments that sell liquor by the drink.

    f. Special holidays or other occasions (with such reason to be stated); and

    g. Other objective criteria that may arise from time to time (which shall be described with reasonable particularity).

3. The predetermined order of selecting motorists at the safety checkpoint.

4. Identity of the supervisor who authorized the safety checkpoint.

5. If the safety checkpoint is moved to a new location outside the area described by originally recorded cross streets (e.g., to a different intersection), the new location will be treated as a new safety checkpoint.

6. A record of any vehicular search, issuance of a citation, or arrest made at the safety checkpoint.  For recorded information under this Section only, a "vehicular search" shall mean the search of any portion of the vehicle not in plain view or if a driver or any passenger exits the vehicle.

    a. Incident reports, including written descriptions of the relevant facts and circumstances, shall be created for each arrest and each vehicular search, regardless of whether the search results in an arrest.

7. Quarterly, the Deputy Chief of Patrol will review data and documentation regarding the location of safety checkpoints and certify in writing that JPD, if it is deploying any checkpoints at all, is deploying them in accordance with this policy, including by accurately completing a summary report for each checkpoint and compiling the following information from each summary report in a searchable spreadsheet: date; location (streets, precinct,

beat); supervisor; reason for checkpoint; number of citations/tickets; number of arrests; number of searches.

8. A summary report, which, at a minimum, includes:

    a. The information set forth in VII.1 through VII.6 above.

    b. Citation numbers for each citation issued, the race of each person cited, and the offense(s) for which each person was cited.

    c. Incident report numbers for each arrest, the race of the person arrested, and the offense for which the person was arrested.

    d. Each incident number for a vehicular search, the race of the person(s) subject to each vehicular search, and the result of the vehicular search (e.g., arrest, citation, no action taken).

Certain data from summary reports on safety checkpoints will be maintained by the Patrol Services Bureau of the Department in a sortable, searchable spreadsheet: date; location (streets, precinct, beat); supervisor; reason for checkpoint; number of citations/tickets; number of arrests; number of searches.

## VIII.   EXIGENT CIRCUMSTANCES SAFETY CHECKPOINTS

1.   Safety checkpoints not in compliance with this Policy may be established under constitutionally permissible exigent circumstances.  To the extent practicable, such safety checkpoints must comply with the requirements of this General Order.

2.   Documentation shall be prepared to describe the exigent circumstances that justified the creation of the safety checkpoint.

## SUMMARY REPORT ON SAFETY CHECKPOINT

| DATE | TIME | LOCATION<br>(STREETS, PRECINCT, BEAT) | SUPERVISOR |
|---|---|---|---|
|  |  |  |  |

**Prepared by:** _____

**Order of Selecting Motorist:** _____

| Reason for Checkpoint: | Select one or more |
|---|---|
| **Unusual incidence of alcohol/drug or other traffic-related crashes** |  |
| **Alcohol/drug-impaired driving violations** |  |
| **An unusual number of vehicle crashes** |  |
| **Other documented alcohol/drug or other traffic incidents** |  |
| **Location of establishments that sell liquor by the drink** |  |
| **Special holiday or other occasions (Describe):** |  |
| **Other (Describe):** |  |

| Citation Number | Race | Offense |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

14

| Incident Report Number | Race | Offense |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| Incident Report Number | Race | Result of Search |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

### § **63-11-40. Driving while driving license or privilege canceled, suspended, or revoked.**

Any person whose driver's license, or driving privilege has been canceled, suspended, or revoked under the provisions of this chapter and who drives any motor vehicle upon the highways, streets, or public roads of this state, while such license or privilege is canceled, suspended or revoked, shall be guilty of a misdemeanor and upon conviction shall be punished by imprisonment for not less than forty-eight (48) hours nor more than six (6) months, and fined not less than two hundred dollars ($200.00) nor more than five hundred dollars ($500.00).

The commissioner of public safety shall suspend the driver's license or driving privilege of any person convicted under the provisions of this section for an additional six (6) months. Such suspension shall begin at the end of the original cancellation, suspension, or revocation and run consecutively.

### § **63-1-5. Requirement of motor vehicle operator's license; types of operator's licenses; penalty for violation of section**

**(1)**

    a.  No person shall drive or operate a motor vehicle or an autocycle as defined in Section 63-3-103 upon the highways of the State of Mississippi without first securing an operator's license to drive on the highways of the state unless specifically exempted by Section 63-1-7.

    b.  The types of operator's licenses are:

        i.  Class R.

        ii.  Class D.

        iii.  Class A, B or C commercial license governed by Article 5 of this chapter; and

        iv.  Interlock-restricted license as prescribed in Section 63-11-31

**(4)** A person who violates this section is guilty of a misdemeanor and, upon conviction, may be punished by imprisonment for not less than two (2) days nor more than six (6) months, by a fine of not less than Two Hundred Dollars ($200.00) nor more than Five Hundred Dollars ($500.00), or both.

_____                                    _____
**James E. Davis**                                                          **Date**
**Chief of Police**

16

IT IS SO AGREED, this 20th day of September, 2022.

For Plaintiffs LAQUENZA MORGAN; LAUREN RHOADES; ARCHIE SKIFFER, JR.; and TIMOTHY HALCOMB:

/s/ Paloma Wu
Paloma Wu (Miss. Bar No. 105464)
Robert B. McDuff (Miss. Bar No. 2532)
MISSISSIPPI CENTER FOR JUSTICE
5 Old River Pl., Ste 203
Jackson, Mississippi 39202
(601) 709-0857
pwu@mscenterforjustice.org
rmcduff@mscenterforjustice.org

Cliff Johnson (Miss. Bar No. 9383)
Jacob W. Howard (Miss. Bar No. 103256)
MACARTHUR JUSTICE CENTER at the
University of Mississippi School of Law
481 Chucky Mullins Drive
University, Mississippi 38677
(662) 915-6863
cliff.johnson@macarthurjustice.org
jake.howard@macarthurjustice.org

*Attorneys for Plaintiffs*

For Defendants CITY OF JACKSON, MISSISSIPPI; CHIEF JAMES E. DAVIS, in his official capacity:

/s/ Claire Barker
Claire Barker (Miss. Bar No. 101312)
Special Assistant to the City Attorney
OFFICE OF THE CITY ATTORNEY
455 East Capitol Street
Post Office Box 2779
Jackson, Mississippi 39207
(601) 960-1799

*Attorneys for Defendants*

17

IT IS SO ORDERED, this 5th day of October, 2022.


_s/ *Kristi H. Johnson*_____
UNITED STATES DISTRICT JUDGE